## TWELLS *v.* COSTEN.

A bill for discovery will not lie against a mere witness.

The object and end of a bill for discovery, is to obtain testimony by an appeal to the conscience of the defendant, which the plaintiff could not otherwise procure, and which is material to the establishment of a clear legal right, set forth in his complaint. His answers are admissions against himself. But the answers of a mere witness to a bill of discovery cannot be evidence against a third person.

To the above rule there is an established exception in cases against corporations, where the chief officer may be made party to a discovery, although no decree is sought or could be made against him. This exception is allowed to prevent a failure of justice; for a corporation can only answer under its common seal, and therefore could not be indicted for perjury, if the answer was false.

Arbitrators, attorneys, and auctioneers have been made parties to bills, although they might also have been witnesses; these are the exceptions to the general rule. These are founded upon the special circumstances, and in general do not appear to be applicable to bills of discovery, *but to bills of discovery and relief*.

A Court of Equity has jurisdiction to compel a vendee to complete his contract for the purchase of lands, as well as to compel a vendor to complete his contract for the sale of such lands. Where the vendor has reserved in his terms of sale, the right to resell the land on the default of the purchaser for his account and at his risk, his sole remedy in case of such resale, for the recovery of the difference between the two sales, is at law, and not in equity.

One cannot come into a Court of Equity to ask discovery against a party otherwise examinable as a witness; even if the witness has acted in such a way as to subject himself to a decree for costs.

A bill will not be entertained to discover whether one is such a person, or where he is, in order only to make him a party to a suit in a Court of Equity; nor will a Court of Equity entertain a bill for discovery when the plaintiff does not know who are the persons against whom the action is to be brought, not stating such circumstances as may enable the Court to judge of the liabilities of the defendant. To state merely that the plaintiff has a right of action against the defendants, or some of them, is not sufficient. The facts must be stated in such a way that the Court may judge of the ultimate liability of the parties.

*April* 30. THIS was a bill in equity, filed by John S. Twells, setting forth, that he was the assignee of Walter Livingston and Charles A. Lyman, trading under the name of Livingston & Lyman, who made to him an assignment for the benefit of their creditors, and among other things, provided in said assignment, he was to sell all the property assigned, and convert it into money, and distribute the proceeds of sale among the creditors of said firm. The bill averred that the complainant accepted the trust; that an inventory and appraisement was made of the estate so assigned to him, and filed in the proper office, and that he gave the security required by law in due form. That among other things which passed by the

assignment was a tract of land on which was erected a number of buildings, that were described in the bill; a steam engine and machinery, and a furnace, known as the William Penn Furnace, which property was subject to a mortgage and lease; and being desirous of performing the duties of the trust, he caused the property to be advertised for sale at public auction, at the Philadelphia Exchange, on a day mentioned in the bill. That at the time of sale the conditions were fully stated, that the property was sold subject to the existing liens; and that all the purchase-money was to be paid, or (at the option of the purchaser) $200 to be paid in cash to the assignee, immediately after the property was struck off; in default thereof, the premises again to be immediately put up and struck off to the highest bidder, at the risk and for the account of the first purchaser. The title papers to be executed, and the balance of the purchase-money, if any, to be paid within ten days from the day of sale.

The complainant further stated in his bill, that, in pursuance of said notice and conditions, the property was exposed to public sale on the day and at the place specified, when divers persons appeared as purchasers, and among others, one Benton Costen, who bid the sum of $10,000, and that being the highest price bid, the premises were knocked down to him for that sum, and whereupon the said Benton paid to the complainant the sum of $200, and subscribed the terms and conditions of sale with his own name.

The complainant then averred in his bill, that he was informed and verily believed that the said Benton was not a person of substance, and had no means of performing his contract; that he had not paid the balance of the purchase-money, although often requested, nor any part thereof, but that the same had remained unpaid for more than ten days after the sale; and that the complainant had caused a deed for the premises to be duly executed, to be tendered to the said Benton. That he had again advertised the property to be sold at a public sale at the risk and expense of the former purchaser, and the same at such second sale was knocked down to one Joseph Stockton for the price and sum of $3000, he being the highest bidder, and that the highest and best price bidden for the same.

The complainant then charged in his bill that the said Benton Costen *did not* bid at the first sale, and did not become the purchaser of the premises on his own account, and for his own purposes and behalf; but as the agent or attorney in fact of some other person or persons; and that the said Benton was employed or

engaged by such other person or persons to bid for the premises, and to buy the same for him or them, and on his or their account; and that the said sum of $200 was not the money of the said Benton, but was furnished or supplied to him by or on behalf of such other person or persons; and that the said Benton and the said other person or persons did fraudulently unite and combine in a plan or scheme by which the said Benton was to bid at the said first sale, and sign his own name as the purchaser of the premises, and that the name of the principal or principals, and actual purchaser or purchasers of the premises, should be withheld and concealed.

The complainant then averred and charged in the bill that he was desirous of bringing an action or suit at law or in equity against the person or persons by whom the said Benton was employed or engaged, and who thereby became the purchaser of the premises, to recover the balance of the purchase-money, or damages for the non-performance of said contract, or for relief in respect to the said fraud; for which purpose he had often applied to said Benton to furnish the name and place of residence of said person or persons, and he had hoped said Benton would have complied with his request, but had not.

The bill then charged that the said Benton was combining and confederating with divers persons unknown to the complainant, who, when discovered, he prayed might be made parties to the bill, and be permitted to charge them as parties defendant. Also that the said Benton pretended that he purchased the premises on his own account, and for his own purposes; and that the sum of $200 paid was his own money, which the complainant averred was not, but the contrary was the fact; that at other times said Benton admitted that he purchased the premises as the agent, and on account of some other person or persons whose names he refused to disclose.

The bill then prayed, that the said Benton be compelled on oath to answer the said complaint, and disclose who were the persons for whom he purchased; and that when such disclosure was made, such other persons be specially interrogated, and compelled to answer the same. A number of interrogatories were introduced into the bill, directed specially to the matters and things charged. Also a general prayer that he set forth in his answer the names and residence of all the persons by whom he was employed to make said purchase; and also a prayer for general relief.

To this bill there was a general demurrer.

The cause was argued by *T. I. Wharton*, Esq., for the plaintiff, and *Charles Lex*, Esq., for the respondent.

Mr. *Lex* in support of the demurrer, contended, 1. That the Court had no jurisdiction.

2. That this was emphatically a fishing bill against a witness.

3. That a bill for discovery is not in the nature of an original bill.

4. A bill cannot be filed against a witness except in the case of a corporation where the officer is required to disclose—sometimes in cases of fraud. He cited 7 Vesey, 287; 1 Vesey, Sr. 425; 1 Vesey & Beam. 545; 1 Vesey, 291; 5 Vesey, 322; Mitf. Eq. Pl. 188; 2 Atk. 394; 1 Vernon, 114; 2 Caine's Cases, 296; 2 Ver. 441; 1 Hopp. 555; 3 Vesey, 343; 1 Eq. C. 76; 12 Law Lib. 35, 77; Story Eq. Pl. 216, § 256; 1 Phil. Ch. Rep. 771; 4 Mil. & Cor. 559; 8 Vesey, 398; 2 Atk. 394; 3 Madd. 486; 4 Watts, 465; 2 S. & R. 498; 1 Yates, 79; 1 Watts, 236; 2 Penn. R. 145; 4 W. & Ser. 316; 9 S. & R. 212; 8 Vesey, 398; 2 Caine's Reps. 296; 1 Hopp. N. Y. 555; 3 Ves. Jr. 343; 4 Mylne & Craig, 287; 1 Mylne & Craig, 559; Story's Eq. Pl. 216, § 259.

Mr. *T. I. Wharton*, for plaintiff, contended the Court had jurisdiction. 1. That the bill was not against a mere witness; he was a party. 2. That it was a case of the first impression. 3. If a mere witness, he comes within the exceptions in the books. 4. This is a bill for relief as well as discovery, and therefore the plaintiff was entitled to proceed with it. 5. The bill charges a combination between the defendant and some one unknown to purchase the property.

He cited 8 Vesey, 404; 1 Bro. C. C. 469; 1 Vesey & Beam. 543; Mitford, 188; 7 Ves. 287, 290; 1 Madd. Chan. 213; Mitford, 153; Story on Agency, 446; 2 Vern. 442; 1 Eng. C. L. 76; 2 Vern. 443; 1 Vern. 212; 2 Atk. 394; 3 P. W. 310; 6 Wharton, 141; 7 Vesey, 289; 1 Vesey & Beam. 545; 1 Vesey, 291; 5 Vesey, 322; 1 Merival, 114; 8 Vesey, 398; 2 Atk. 394; 4 Watts, 465; 2 S. & R. 498; 1 Yates, 79; 1 Watts, 238; 2 Penna. Rep. 145; 7 Cranch, 69; Story's Equity, 142; 1 Brown C. R. 469; 1 Vesey & Beam. 543; 7 Vesey, 287; Story's Equity, §§ 192, 186, 204; Harr. on Disc. 9, 17; 1 Madd. Ch. 213; 14 Vesey, 245; 3 Camp. N. P. 317.

The opinion of the Court was delivered by

KING, President.—The bill in this case sets forth that the plaintiff, John S. Twells, as the assignee in trust for the creditors of the firm of Livingston & Lyman, bankrupts, exposed to public sale certain real estate belonging to the assignees. That by the terms of the sale $200 were to be paid by the purchaser, immediately on the property being struck off to him, and the balance within ten days, on the execution of a deed conveying a good title; and that, in case of non-compliance with the conditions of sale, the property would be exposed to a resale for the account and risk of the purchaser. That at this sale, Costen, the defendant, became the purchaser for the price of $10,000, subject to certain encumbrances to which it was sold as liable to, and paid down the $200 required by the conditions. That, although the plaintiff had caused a deed for the property to be tendered to him, Costen had refused to comply with his contract, and pay the purchase-money. That the property was subsequently exposed to public sale, in consequence of Costen's default, and was purchased for the price of $3015, by a certain Joseph Stockton. The bill further complains that Costen was not a person of substance, nor had he the means of complying with his said contract; that he did not bid at the said sale on his own account, but as agent of some other person; that the said sum of $200 was not his money, but furnished to him by such other person, with whom he, the said Costen, had fraudulently combined and united in a plan or scheme, by which the said Costen was to bid for the property and give his name as the purchaser; and that the name of the principal and actual purchaser was to be withheld and concealed. That the plaintiff, being desirous to bring a suit for the recovery of the balance of the purchase-money, or damages for the non-performance of the said contract, or for relief in respect to the said fraud, had applied to the said Costen to furnish him the names of his said principals, which he refused, pretending he had purchased the property on his own account. The relief prayed for is, that the defendant Costen should answer the interrogatories, which have for their object the ascertainment of the facts set forth in the stating part of the bill. There is also the usual prayer for general relief. The defendant has demurred to the bill, assigning various causes of demurrer. Those which go to the merits will only be noticed; mere defects in form may be amended, if, on examination, the proceeding can be sustained on principle.

The real question in the cause is simply whether a Court of Equity will entertain a bill of discovery filed by a plaintiff against a defendant to compel the latter to disclose, whether, in a con-

tract entered into between them, he was not the mere agent of a principal not named, in order to enable the plaintiff to maintain an action against the unknown principal for an alleged breach of the contract. This the defendant denies, on the ground that such an agent is a mere witness, against whom, according to the settled doctrines of equity, a bill of discovery cannot be maintained. On the other hand, it is insisted by the plaintiff, that, if such a bill is not sustained, the legal anomaly of a right without a remedy will be presented; because, unless the principal against whom the plaintiff's claim subsists, can be ascertained in the first instance, the latter can institute no legal proceeding in which he could avail himself of the testimony of the agent. The case is not without novelty in its precise circumstances; and as the principles involved in it are of much more importance than the mere results of the particular case, they have been fully and carefully considered.

That Costen, the defendant, is a competent witness, whom the plaintiff could examine in an action at law, to establish a claim which he may have against a third person, of whom Costen was the agent, on a contract arising out of and within the limits of his authority as agent, is clear. It is equally clear that a bill for discovery will not lie against a mere witness. Hence, to establish the regularity of this proceeding, the plaintiff must show the existence of a state of things in this case which takes it out of the operation of the general rule. This general rule, having its foundation not only on settled authority, but in practical utility, should be cautiously dealt with, and not frittered away by distinctions which do not necessarily spring from it. The object, end, and office of the bill of discovery is to obtain testimony by an appeal to the conscience of the defendant, which the plaintiff could not otherwise procure, and which is material to the establishment of a clear legal right set forth in his complaint. When addressed to the party sought to be charged by the proceeding, his answers, being admissions against himself on oath, compose the highest species of evidence against him. But the answers of a mere witness to a bill of discovery could not be evidence against a third person; because, as to the latter, the whole proceeding would be *res inter alios acta*, a proceeding to which he is an entire stranger, and by which, according to the elementary principles of justice, he ought not to be affected. The answer of such a defendant will not even be evidence against a co-defendant in the same bill: Mitford's Pleadings, 188; because, although the latter is a party to the proceeding, he as such has neither the right nor the oppor-

tunity of cross-examining his co-defendant, and should not, therefore, be compromitted by what the latter may respond to the interrogatories of their common adversary. The cases of Plumer v. May, 1 Vesey, Sr. 426, Dinely v. Dinely, 2 Atk. 394, Cookson v. Elliot, 2 Brown C. C. 252, Fenton v. Hughes, 7 Vesey, Jr. 287, Howe v. Best, 5 Madd. 19, are instances of the practical application of this rule.

To this rule there is one established exception, viz. cases against corporations, where chief officers may be made parties to a discovery, although no decree is sought or could be had against them. The reason of this exception, which has been considered as a stretch of the authority of the Court to prevent a failure of justice, seems to have sprung from the fact, that a corporation could only answer under its common seal, and therefore could not be indicted for perjury, however falsely it might answer; and from the idea that, though the answers of the officers could not be read in evidence against the corporation, they might be of use in directing the plaintiff how to draw his interrogatories to obtain a better answer. These are at least the reasons given for the exception by Lord Talbot, with whom it originated, in Wych v. Meal, 3 Peere Williams, 312. These reasons have not been deemed satisfactory by subsequent Chancellors, for, as is justly observed by Lord Eldon in Fenton v. Hughes, 7 Vesey, Jr., 289, "it is very singular to make a person a defendant, in order to enable you to deal better and with more success with those whom you have the right to put on the record." This rule, however, is established; but certainly the anomaly it has introduced, does not invite its further extension: See Fenton v. Hughes, supra; Dummer v. Chippenhorn, 14 Ves. Jr., 524; Gibbons v. Waterloo Bridge, 5 Price, 491; Story's Equity Plead. § 1501; Story's Equity Plead. § 295; Wright v. Dame, 1 Metcalf, 237. •

There is another class of cases, in which arbitrators, attorneys, auctioneers, &c., have been made parties to bills, although they might also have been witnesses, and so far seem to form exceptions to the general rule. These, says Judge Story (Equity Jurisp. § 1500), "are all founded upon special circumstances, and *in general do not seem applicable to mere bills of discovery, but to bills for discovery and relief.*" The learned commentator might have even gone further and said, that all the decided cases, in which such bills have been entertained, were cases for relief, and in which this class of defendants were liable at least to a decree for costs, arising from their interest in, or fraudulent intermeddling with, the matter in

contestation. There can of consequence be no objection to a decree against a party so circumstanced, arising from the fact that he might have been used as a witness, instead of being charged as a defendant. It is for the plaintiff to elect, whether he will use him as the one, or charge him as the other, and it does not lie in his mouth to complain, if the plaintiff has made the latter election. A party so circumstanced is not the less a party, because in another form of the controversy he might have been made a witness.

The first case in order of time in which this subject is found distinctly broached is Bennet v. Vade, 2 Atkyns, 324, decided by Lord Hardwicke in June, 1742, which was a bill filed by an heir to set aside a conveyance made by his ancestor of his estate to the defendant, on the ground of fraud and imposition. The attorney who drew the deed was made a party, and was decreed to pay costs. But in this case Wildman, the attorney, had an annuity settled on himself and his wife of £40 per annum. In this respect he was a clear party in interest, vendee being chargeable as a party to the fraud, and the bill for relief and not simply for discovery. In Dinely v. Dinely, 2 Atkyns, 394, decided in the following August, Lord Hardwicke dismissed the bill because the defendant was a mere witness. No charge of fraud or interest appears to have been preferred against the defendant: Plumer v. May, 1 Vesey, Sr. 426, decided in 1750, is the next case in order. That was a bill filed to disclose the circumstances of the execution of a will against the subscribing witnesses. Lord Hardwicke here said, " You cannot make one a defendant to a bill who is merely a witness, in order to have a discovery of what he can say of the matter." But he entertained the bill because there was an express charge that the defendant claimed some right or interest under the will. Commenting on this case in Fenton v. Hughes, 7 Vesey, Jr. p. 288, Lord Eldon says, " There was a charge that he (the witness) had an interest; and from the last passage of the judgment, you may collect that it was not a *mere charge* of interest, but of such a species of interest that at the hearing there might have been a decree for an account against him. *As to that case I can only say, unless it was upon a bill for relief I do not know how to understand it.*" The subsequent cases are all of the same character : Bowles v. Stewart, Sch. & Lef. 227. They are bills for a relief, and although arbitrators, attorneys, and others have sometimes been made parties, although they had no interest to convey, give up, or receive, such parties had, however, by their conduct in respect to the subject, incurred liabilities, rendering them interested in the issue

of the suit. In all the cases in which a person without interest in the question has been made a party, it has been done because there has been a charge against him, not respecting the question, but respectingthe cause: Hare on Dis. 66. Thus the case of Chicot *v.* Legussire, 1 Ves. Sr. 316, arose on a bill for relief, viz. to set aside an award. The arbitrators were made parties, and the Court, Lord Hardwicke, being satisfied of the improper conduct of the arbitrators, considered them properly made parties, and ordered them to pay costs. Lord Lonsdale *v.* Littledale, 2 Ves. Jr. 450, was a bill for *relief* against an award, in which the arbitrator was made a party. His demurrer was overruled, because of the charge of the combination in the bill. "There have been cases," says Lord Eldon, "of agents to sell, auctioneers, &c., made defendants without objection. Whether this arose originally from some interest in them, as holding deposits, that would frequently entitle the plaintiffs to relief against them, I do not know, but I cannot deny that such persons have been made defendants where it would be difficult to say any relief was to be prayed against them at the hearing. *But these cases are upon* bills for *relief.*"

Mr. Hare, in his excellent Treatise on Discovery, in alluding to this subject observes, that "the question, whether a party might be examined as a witness, is not decisive of the question of making him a *defendant in a bill for equitable relief*, though *it* may *determine* whether he be *a proper party to a bill for discovery merely*. In frequent instances, the sole objection to the examination of a defendant in equity as a witness, is that which arises from his being a party to the bill. The defendant may be brought before the Court in some character necessary to substantiate the suit, that there may be proper parties to it. It will not be sufficient to object to discovery *in such a case*, that the defendant might be examined as a witness:" page 64. He is here speaking of a bill for relief; for, although every bill for relief is a bill for discovery, the converse of the proposition is not true. Now, the bill in this case, is a simple bill of discovery to aid in the prosecution of a suit intended to be brought " to recover the balance of the purchase-money, or damages for the non-performance of the contract, or for relief in respect to the fraud." In no other point of view could it be entertained by the Court. A Court of Equity has no jurisdiction to enable the recovery of the differences between the amount for which land has been contracted to be sold, and the amount it has actually sold for on the default of the first purchaser, both sales being open, fair, and public. Equity has jurisdiction to

compel a vendee to complete his contract for the purchase of lands, as well as it has to compel a vendor to complete his contract for the sale of such lands. Such was the judgment of this Court in the much contested case of Dalzell *v.* Crawford, ante, p. 37. But where the vendor has reserved in his terms of sale, the right to resell the land on the default of the purchaser for his account and risk, his sole remedy in case of such resale for recovering the differences between the two sales, is at law. In exercising his reserved right of resale, on the default of the purchaser to complete his contract, he has elected his remedy; viz. an action at law for the recovery of the differences. Because in making such resale he has put it out of his power to convey the lands to the purchaser after the Court shall have decreed the contract to be obligatory between them. It is the justice and fitness of mutuality of remedy between the parties, that gives equity jurisdiction, to compel a purchaser to receive a conveyance and pay the purchase-money, as well as to compel a vendor to convey the land and receive the purchase-money. When the vendor, on the default of the purchaser, has resorted to a reserved right to sell the land at the risk of the latter, and to look to him personally for any differences which may have arisen between the two sales, he has closed the doors of the Court against himself, so far as respects any remedy for the specific enforcement of the contract.

Taking, therefore, the case as disclosed by the bill, the plaintiff has no standing in this Court, except the right to invoke our assistant jurisdiction to aid him in obtaining a disclosure of facts necessary to support his legal claim through the instrumentality of a discovery. This he must take on the terms on which it is given to every other suitor. He cannot have a discovery against a mere witness. Nor can he come into the Court to ask a discovery against a party otherwise examinable as a witness, on the ground that the witness has so acted in the cause, as to subject himself to a decree at least for the costs; because equity proceeds in such a case against a witness so circumstanced only on a bill for relief; and decrees a discovery against him, not so much as a witness as a party. In fact, this is the key to the whole doctrine, and explains when and wherefore a party who *may* be examined as a witness *can* be joined in a bill, which seeks effective relief against others who are the parties really interested in the question in dispute.

The case remains to be considered under another point of view; viz. whether the Court will entertain such a bill on the ground that its refusal to do so would lead to a failure of justice. Reasons of

supposed necessity in a particular case, are not always the safest guides to judicial discretion. In our anxiety to remedy a particular evil, we may be sometimes induced to introduce judicial innovations subversive of the common weal. When it is proposed to extend a well defined and well understood jurisdiction, on account of some supposed necessity we may subserve, the proposition should be considered also in connexion with the inconveniences we may introduce. As Courts are bound by the principles they announce in all their application, new ones should only be recognised after carefully weighing the entire result of their prospective operations. Now what is asked of us here on the footing of necessity? No more nor less than this: that we will entertain a bill against any party to a contract, whom the other party to it may suspect to have been an agent at the time of entering into the contract, in order to discover whether his suspicions are well or ill founded, upon his averring an intention to bring an action against such unknown principal, if he exists and is discovered. It is plain that this doctrine, if sound, would not only open a wide field to litigation, but would afford, under the pretext of a legal remedy, a means of inquisitorial espionage into the affairs of others, which *might* be, if it would not certainly be, abused. The consciousness of these evils has led the enlightened men who have founded our system of Equity Jurisprudence, to exercise the grave power of compulsive discovery with extreme care, and to frown upon all efforts to use the powers of the Court for experimental objects. It is these considerations which have induced the Court uniformly to refuse to entertain *a bill of discovery* against a party who might be examined as a witness, and to hold that no one can be made a party to a *bill for relief* against whom some decree cannot be made, either remedial, to repudiate a pretended claim, or punitory, for some participation in a fraud which the Court is called upon to release against. When the former of these rules was departed from, in the cases of corporations, from a supposed necessity, subsequent reflection has led to dissatisfaction, that, even in this instance, the general rule had been infringed upon. We are now asked to take a further step in advance, and to permit a bill of discovery to be filed against an alleged agent of an unknown principal, in order to discover such principal; and this on a bill on which the Court cannot grant relief for want of jurisdiction over the subject-matter of it; and why, on principle, should this be done? If one man deals with another on his own credit, as being the principal contractor, he has all that he has contracted for. If

he distrusts the sufficiency of him with whom he deals, if he suspects he is but the agent of a third person, it is easy for him to decline the negotiation, unless he is satisfied in all these particulars. If property is exposed, as in this case, to public sale, and the vendor wishes to guard himself against the interference of an irresponsible agent in the biddings, he can guaranty himself by requiring a sufficient deposit on receiving the bid. This was actually done in this case, and it was because of the insufficiency of this deposit, that the plaintiff is now in Court. It is not the function of Courts to supply defects in the terms of contracts, which the want of prudence and forecast in the contractor has omitted, at all events, they ought not to aid him to get out of a difficulty which a superior sagacity would have anticipated, by introducing a rule of law which might work general evil. The necessity in such a case seems a necessity arising from want of sufficient forecast in making a bargain; a necessity which, if admitted to be sufficient to modify the positive rules of law and equity in all cases, would render those rules unworthy of the name.

But let us examine how far this subject has received judicial consideration. The first case we find under this head is Dinely v. Dinely, 2 Atk. 394. That was a bill to establish the will of Sir John Dinely, and sought a discovery against the defendant, his wife, whether she had any son then living by Sir John. She demurred to the bill, because she was a competent witness at law. Lord Hardwicke, in delivering his judgment, said: "You cannot bring a bill here to discover *whether there is such a person*, or *where he is, in order only to make him* a party to a suit in this Court, and therefore the demurrer must be allowed." The species of information required by the plaintiff in this case, was such as was peculiarly, if not exclusively, in the knowledge of Lady Dinely, and so far the case is parallel with the present. Indeed it seems to rule it, because the necessity of examining Costen, arising from his supposed exclusive knowledge as to who was his principal, if he had any, was equally urgent, as far as appears from the report, as respected Lady Dinely. The same principle was again agitated in the case of The Mayor of London v. Levy, 8 Vesey, Jr. 398. In that case a bill was filed for discovery against Levy, and three other persons, co-partners in trade, seeking to know whether certain goods entered in the custom-house, in the name of one of the partners, were not really the property of the defendant Levy, an alien, *or some other, and what person, an alien*. The avowed object of the bill was an action intended to be brought by the city of

London, to recover certain duties tò which the city was entitled, if the owner of the goods had really been Levy, or any other person than a subject of the British Crown. The bill was demurred to on various grounds. Lord Eldon, in his opinion sustaining the demurrer, among other things said: "It has never yet been, nor can it be, laid down, *that you can file a bill not venturing to state who are the persons against whom the action is to be brought;* not stating such circumstances as may enable the Court, which must be taken to know the law, and therefore the liabilities of the defendants, to judge; but stating circumstances, and averring that you have a right to an action against the defendants, or some of them."

This case is even more decisive against the plaintiff than *Dinely v. Dinely.* The bill was for discovery, in order to furnish evidence for an action at law *to be brought.* Its object was to compel the defendants, or some of them, to disclose who was the party against whom the action was to be brought, whether themselves or either of them, or a stranger within their cognisance. So far almost *pari passu* with this case. The decision of the Court is on the general merits, the Chancellor distinctly saying he did not put the case on the ground of pains and penalties. So much for positive authority. Negative authority may also be invoked. For that purpose, the text-writers on the law of Agent and Principal, and Vendor and Purchaser, such as Paley, Story, and Sugden; those treating on equity principles and practice, such as Maddock, Story, Jeremy, Mitford, Hare, and Wigram, have been searched carefully, and in none have we found the idea suggested that a bill of discovery based on the principles of the present could be sustained. If it is true that equity will entertain a bill to compel a defaulting contractor to disclose whether he was or was not the agent of a third person, in making such contract, surely some of these writers would have alluded to the existence of a principle of such practical influence on the law of contract, and of the dealings of Courts of Equity in regard thereto. This silence is strong evidence against the notion that such a doctrine exists in equity. There are two cases, however, to be found in Vernon's Reports, which I admit in the first instance to have embarrassed me. These are the cases of *Heathcote v.* Fleet, 2 Vern. 442, and *Morse v.* Buckworth, 443, also introduced into Equity Cases Abr. 76.

The first is reported in these words: "Bill to discover who was owner of a wharf and lighter, to enable the plaintiff to bring an action for the damages his goods sustained by the lighters being overset by the negligence of the lighterman. The defendant

49                          2 K

demurred." The second, Morse *v.* Buckworth, is thus stated: "The ship called the Turkey Merchant taking fire by the neglect of the master or ship's crew, the plaintiff, who was one of the freighters, and had his goods burnt, brought his bill to discover who were part owners of the ship, to enable him to bring his action. The defendant demurred." Both cases were decided together, and on grounds having no relevancy to the question before us. In neither of the cases it is precisely said who were the defendants. If the defendants in the bill were charged to have been the owners of the vessel, the parties directly liable for the damages suffered by the plaintiffs, then the bills were without exception, because brought not against witnesses, nor experimentally against third persons, but against the real parties charged with the liability, to discover whether they were the latter or not. It may, indeed, be fairly inferred from the argument of the counsel in the causes, that this latter was the fact. For there it is said, that "in *both* cases it was insisted for the defendant, that it was a hard demand in its nature;" language which could not with propriety have been applied to a mere witness, or an indifferent third person, but which accords perfectly with a case against an alleged owner, of whom discovery was sought, in order to charge him at law. That this is the true character of these cases, may be fairly inferred also from the fact that they never have been cited either in a Court of Equity, or by any text-writer in connexion with the notion of a jurisdiction in equity, such as that invoked in the present case. They are not all referred to by Judge Story in his "Treatise on Equity Jurisprudence," and are only noticed in a note to § 579 of his "Equity Practice," in connexion with another subject. In Mr. Hare's work on Discovery, they are referred to as proving that a discovery may be asked as well to sustain an action pending as one about to be brought, and for no other purpose: p. 51. Neither Jeremy nor Wigram refer to them at all. Rightly understood, however, the cases are sound law, and in harmony with all the other decisions. But even could they be considered as coming into collision with the more recent decisions, still the latter could not be shaken by the authority of a book of the questionable character of Vernon's Reports, which are but brief notes of cases taken by Mr. Vernon, published after his death, and certainly not remarkable for accuracy.

Upon the whole, considering the bill in this case as a pure bill for discovery, in aid of suit proposed to be brought at law; and being of opinion that in no other point of consideration does it contain

any matter over which equity has any jurisdiction; and being finally of opinion that it does not present a case in which a Court of Equity ought to entertain jurisdiction for the purposes of discovery,

We sustain the demurrer, and order the bill to be dismissed.